Laura A. Lindner, Attorney, Littler Mendelson P.C., Chicago, IL, for Defendant-Appellee.

Before POSNER, KANNE, and SYKES, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff sued the defendant, her former employer, charging that discharging her had violated Title VII of the Civil Rights Act of 1964. The parties agreed in writing to settle the litigation rather than litigate to judgment, but their agreement provided that there would be "[n]o binding agreement until the typed settlement agreement is signed"—which it never was. The plaintiff's lawyer did negotiate a proposed settlement agreement with the defendant's lawyer, but the written terms made clear that this was not the "binding agreement" to which the parties had referred. Nevertheless the district judge treated it as such, ruling that the litigation had been ended by a settlement and by so ruling precipitating this appeal by the plaintiff.

The parties had agreed in writing however that there would be no binding agreement until the typed settlement agreement was signed, and it never was by either the plaintiff or her lawyer. There was therefore no agreement that bound the plaintiff, whose appeal asks us to vacate the district court's decision on the ground that there was no settlement terminating the litigation. We therefore vacate the decision of the district court and remand for further proceedings in that court; since we have determined that there has been no settlement, the case remains open in the district court.

ST. VINCENT RANDOLPH HOSPITAL, INC., Plaintiff-Appellant,

v.

Thomas E. PRICE, Secretary of Health and Human Services, Defendant-Appellee.

No. 16-3956

United States Court of Appeals, Seventh Circuit.

Argued April 11, 2017

Decided August 22, 2017

Before WOOD, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

When St. Vincent Health group acquired Randolph County Hospital in 2000, the building was 80 years old and needed to be refurbished or replaced. St. Vincent Health decided to build a replacement facility, to be operated by St. Vincent Randolph Hospital, Inc. (the Hospital). In 2002 the Hospital financed the project by borrowing about $15.3 million from St. Vincent Hospital and Health Care Center, Inc. (St. Vincent Indianapolis), a fraternal corporation in the St. Vincent Health group. Within a year the whole St. Vincent Health group was acquired by Ministries of Ascension Health, the nation's largest Roman Catholic health-care system. Ascension Health then loaned about $15.6 million to the Hospital; both Ascension Health and the Hospital treated this as a refinancing of the loan from St. Vincent Indianapolis. This appeal presents the question whether Medicare will reimburse some of the cost of financing the new hospital's construction.

Statutes require the reimbursement of a medical provider's reasonable costs to care for Medicare patients, see 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A), and a regulation, 42 C.F.R. § 413.153, adds that these include the necessary and proper costs of financing medical facilities. No one has questioned the Hospital's decision to replace the old facility or the commercial reasonability of the terms (such as the rate of interest) on which the Hospital borrowed the money. But the body responsible for evaluating hospitals' Medicare claims (then called a fiscal intermediary) rejected the Hospital's request for payment. It gave two reasons. First, a regulation disqualifies loans from affiliated entities—and although there is an exception for loans within groups controlled by a religious denomination, that exception applies only to loans from parent corporations rather than fraternal ones. See 42 C.F.R. § 413.153(c); *Hinsdale Hospital Corp. v. Shalala*, 50 F.3d 1395 (7th Cir. 1995). Second, an administrative handbook

disqualifies loans that lack documents showing the advances to be "[n]ecessary and proper for the operation, maintenance, or acquisition of ... facilities." Provider Reimbursement Manual 15–1 § 202.1. (Both sides treat this manual as having the status of a regulation.) See also 42 C.F.R. § 413.24. The arrangement between the Hospital and its fraternal corporation was poorly documented. It was reflected in resolutions adopted by both corporations' boards and in an amortization table, but not in a note or security agreement.

Recognizing these problems, the Hospital withdrew its request that Medicare cover any of the expense for time before fiscal year 2004 but again requested compensation for 2004 through 2008, after Ascension Health had refinanced the loan in a way that complies with § 413.153(c)(2) and entails the paperwork usual for construction-financing loans. After the intermediary again said no, the Hospital appealed to the Provider Reimbursement Review Board, which reversed and ordered the 2004 to 2008 claims paid. The Board concluded that the problems with the 2002 loan did not taint the refinancing in 2003—that none of the voluminous regulations either prohibits refinancing or provides that problems with one loan cannot be fixed by refinancing.

The intermediary then appealed to the Administrator of the Centers for Medicare and Medicaid Services, who makes the final decision on behalf of the Secretary of Health and Human Services. The Acting Principal Deputy Administrator reversed the Board. The entirety of the reasoning is this paragraph:

> The Administrator finds that the documentation submitted by the [Hospital] was insufficient to establish that the loans were necessary and proper and related to patient care. The [Hospital] did not produce a signed loan contract for the first loan between related providers. The only evidence of the terms of the loans [sic] were [sic] amortization tables. Thus, the initial loan between the [Hospital] and St. Vincent Health was not "proper" according to the regulations or the [Provider Review Manual]. Additionally, the [Hospital] did not submit sufficient evidence to establish that the initial loan was paid off by the [loan from Ascension Health], nor did they provide sufficient evidence as to what interest payments were attributable to the initial loan. Thus, the Administrator finds that the Intermediary's disallowance of the interest expense for the [Hospital's] 2004, 2005, 2006, 2007, and 2008 fiscal years was proper.

A federal district court was the Hospital's next stop. The judge found two themes in this explanation: first that the initial loan was poorly documented, and second that the Hospital had not established that the loan from Ascension Health refinanced the initial loan. The judge found the first of these reasons lacking. The Acting Principal Deputy Administrator did not cite any regulation or handbook for his (apparent) view that errors can never be fixed by refinancing, while the Board, which evaluated that question in detail, had explained cogently that problems with one loan do not "taint" future loans. So the judge rejected the first reason. But the judge thought the second reason sufficient and granted summary judgment in the Secretary's favor. 2016 U.S. Dist. LEXIS 131212 (S.D. Ind. Sept. 26, 2016).

The Secretary's brief in this court defends both of the Acting Principal Deputy Administrator's reasons. But the appellate brief, like the final administrative decision, does not explain what rule or equivalent legal standard forbids refinancing to replace a disqualified loan with a proper one. In the years 2004 through

2008 the Hospital incurred financing costs to pay for the new hospital. Why should the fact that it cannot recoup earlier financing costs stand in the way of reimbursement for costs actually and prudently incurred in later years to provide medical services to Medicare patients? The Acting Principal Deputy Administrator did not give a reason—which means that there is no reason, for under the *Chenery* doctrine an administrative decision stands or falls on the agency's explanations. *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). When the agency just asserts an ipse dixit, then the decision falls for the lack of a reason. And although this does not matter under *Chenery*, the Secretary's brief not only lacks legal authority on this issue but also doesn't explain why the Medicare system would want to forbid refinancing.

Documentation, by contrast, is a real requirement. 42 C.F.R. § 413.24(a)–(c). But the Acting Principal Deputy Administrator did not find that the loan from Ascension Health is inadequately papered. The objection, rather, seems to be that documents do not adequately show that the new loan replaced the old one—that this was a refinancing transaction rather than an infusion of additional capital. We say "seems to be" because the Acting Principal Deputy Administrator's language is opaque, but this is our best understanding.

Yet the Acting Principal Deputy Administrator did not explain what is missing. The Hospital submitted voluminous documentation—auditors' reports, ledgers, tax returns, and more—tending to show that refinancing occurred. The Acting Principal Deputy Administrator did not mention any of this or say why it is inadequate. Again we have an ipse dixit. The Secretary has considerable discretion under the regulation and the manual to decide what paperwork is needed to demonstrate that a loan

meets the substantive criteria for reimbursement, but it will not do to set a trap by insisting after the fact that a given loan was not documented in a way never before required by any regulation or opinion. A reader of the final administrative decision would have had no idea, not even an inkling, what is missing, why that missing thing is required, or how to fix the problem.

At oral argument the Secretary's appellate lawyer told us what *he* thought the critical omission was: a "debt discharge notice" evincing St. Vincent Indianapolis's acknowledgment that its loan had been repaid. The administrative decision did not mention this as a shortcoming or explain what regulation or manual calls for a "debt discharge notice", so again we have a *Chenery* problem. And again we must wonder what sense this makes. St. Vincent Indianapolis could acknowledge repayment on the back of an envelope and doubtless would do so for its fraternal institution. Requirements of documentation ought to be designed to protect the Treasury from spurious or commercially unreasonable claims and so should emphasize documents that are verified by third parties or costly to sign because they create legal obligations; why make reimbursement depend on a document that costs no one anything and thus has no ability to separate real from spurious claims?

The Secretary's appellate brief makes a final argument: the second loan is larger than the first. The Hospital borrowed approximately $15.3 million from its fraternal corporation and refinanced with a loan of some $15.6 million from Ascension Health. But during 2002 and 2003 it should have paid down some of the indebtedness on the 2002 loan; that's what the amortization table provided. So the amount of credit needed to refinance in 2003 should have been lower than the principal amount of

the 2002 loan. Instead the new loan was higher. This suggests—though it does not show—that Ascension Health provided the Hospital with some working capital as well as a refinancing of the 2002 loan. The cost of working capital may or may not be compensable under the Medicare program, see 42 C.F.R. § 413.130(i), but the documents in this case file (and the arguments of counsel) do not shed light on the issue.

Yet again, however, we have a *Chenery* problem. The Acting Principal Deputy Administrator did not make anything of the difference in the amounts loaned by St. Vincent Indianapolis and Ascension Health. His decision therefore cannot be enforced on that ground—which at all events would not justify refusing to reimburse all costs of the full loan. This problem, if it is a problem at all, would justify no more than limiting reimbursement to the financing costs needed for the new hospital's construction.

█ Once problems in an administrative decision have been identified, a court remands to the agency for further consideration. *Negusie v. Holder*, 555 U.S. 511, 523–24, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009). The "taint" theory is legally untenable and cannot be reasserted on remand, but the agency is free to ask the Hospital for more or better documentation and to explore the significance of the difference in the principal amounts of the two loans. The judgment of the district court is vacated, and the case is remanded with instructions to remand the proceeding to the Secretary for proceedings consistent with this opinion.